**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SAAD BAHODA, #215121,

Petitioner,

Civil No: 05-CV-74228
Honorable Denise Page Hood
Magistrate Judge R. Steven Whalen

v.

ANDREW JACKSON,

Respondent.
_________________________________/

**OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner, Saad Bahoda, is a state inmate currently incarcerated at Bellamy Creek Correctional Facility in Ionia, Michigan. Petitioner was convicted at the conclusion of an Oakland County Circuit Court jury trial of conspiracy to possess with intent to deliver and to deliver more than 650 grams of cocaine, Mich. Comp. Laws §333.7401(2)(a)(I). Petitioner was sentenced to mandatory life imprisonment without parole. Petitioner has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. §2254. For the reasons that follow, the Court will deny the petition.

**I. BACKGROUND**

Petitioner's conviction "arose from an alleged conspiracy to import and sell drugs in the metropolitan Detroit area." *People v. Bahoda,* 202 Mich. App. 214, 216; 508 NW2d 170 (1993). The only set of underlying facts in the record, which discuss Petitioner's alleged involvement in the crime with which he has been charged and convicted, are set forth by the state in its response to Petitioner's direct appeal. They are objective facts supported by the record and are as follows in pertinent part:

[Rene] Arias started out selling drugs in Michigan by selling joints of marijuana and ounces of cocaine from an ice cream truck (T of 2/4/91, hereafter T-I, 48-49). Arias began dating a woman who introduced him to some Columbians who sold cocaine. (T-I, 50). Arias began working for William and Lasardo Jimenez in 1987 (T-I, 53-54). Arias would buy three to five kilograms of cocaine from Lasardo Jimenez and sell it to customers. (T-I, 55). Arias drove a black Mercury downtown Florida with $800,000 in it. A few days later, Arias drove the same car back to Michigan with 35 kilograms of cocaine in it. (T-I, 56-61). Arias met Lasardo Jimenez and Everett, an Argentine, at the Oakland Mall, Defendant Bahoda, Ray and Atheer met Arias and Lasardo Jimenez at the mall and negotiated the price of the cocaine. Arias testified that Jimenez would charge the Arab connection between $14,000.00 and $17,000.00 per kilogram depending on what Jimenez had paid for the cocaine. (T-I, 63-66).

* * *

Arias testified further that on his second trip, he brought up 33 kilograms of cocaine from Fort Lauderdale. Defendant Bahoda, Ray and Atheer met Arias at a Holiday Inn and talked about price. (T-I, 73-74) On the next day, Arias gave the car to Defendant and Atheer. Another guy worked for Defendant and Atheer brought the money to Arias four or five days later. The money was in bags of $5,000 (T-I, 76-78). Arias then put the money in the spare gas tank (T-I, 79-80). William and Lasardo bought five Jetta automobiles because it was easy to make a fake compartment on a Jetta. (T-I, 81). Arias made a trip from Florida to Michigan in a light blue Jetta with Michigan plates and brought up forty-nine kilograms of cocaine in a fake compartment. . . . Arias took four kilos of cocaine as his payment. Arias then gave the car to Defendant Bahoda and Atheer at a Bob Evans restaurant. (T-I, 85-86).

* * *

Arias testified further that he made more trips from Florida to Michigan and delivered cocaine to Defendant Bahoda and Atheer. (T-I, 91-93). Arias was followed once and talked with Defendant about protection. Defendant said they would take care of Arias. (T-I, 92-93). Arias testified that Ray was the boss and Defendant Bahoda and Atheer were the up front people. (T-I, 97-98). On one occasion, Ray and Defendant had customer problems and couldn't pay for a shipment they had already received. Lasardo Jimenez, Defendant and Ray had a three-way telephone conversation to try to resolve the problem (T-I 99-102). Arias then drove up another 20 keys of cocaine to Ray and Ray came up with $425,000.00 (T-I 102-103) . . . Ray brought the $425,000.00 to Arias' hotel room in a garbage bag. (T-I, 106).

Arias testified further that he was eventually arrested with 99 kilos of cocaine which were for Defendant, Atheer and Ray (T-I, 107). Arias made a plea agreement with the federal government to testify against the individuals with whom Arias had been dealing (T-I, 107-108). Arias was charged with a life maximum offense and was permitted to plead guilty to a 15 year maximum offense in return for his testimony.

* * *

[Hassan] Haidar testified further that he knew Defendant Bahoda. Haidar discussed

> purchasing a kilo of cocaine form Defendant. . . . Haidar knew that Defendant hung around with Memiz, Ray, Akrawi, Zakar, Atheer Gappi and Harry Kalasho and they were involved in the drug business. (T-II, 252).
>
> * * *
>
> [Wissam] Abbod purchased drugs from Ray Akrawi with Defendant Bahoda . . .
>
> * * *
>
> In 1985, [Salwan] Asker got into the business of dealing drugs with first Harry Kalasho and then Ray Akrawi. In another year, they were joined by Defendant Bahoda, Basam Jarges, Nick Konja, Sam Hermi, Hatim Zakar, Atheer Gappi and a whole bunch of others. (T-III, 139).
>
> * * *
>
> Special Agent Scott Lamb of the DEA testified that he had been involved in the investigation of the Kalasho or Akrawi Organization for over two years (T-IV, 392). In July of 1990, indictments were issued and Agent Lamb attempted to locate Defendant Bahoda immediately. Agent Lamb and others searched for Defendant all night long but could not locate him. Based upon interviews, agents searched for Defendant in California. Defendant Bahoda was arrested near San Diego, California . . .

(Appellee Brief, 4/10/03, at 1-13 ).

Petitioner filed an appeal of right and raised the following issues:

> I. Did the several references by the prosecutor and his witnesses to Defendant's Iraqi nationality, in the midst of the Persian Gulf War, violate Defendant's right to a fair trial?
>
> II. Did reversible error occur when the prosecutor vouched for and improperly bolstered the credibility of his witnesses by suggesting that he had special knowledge to insure their truthfulness, and by indicating that the police had carefully checked out their stories?
>
> III. Did the admission of evidence suggesting Defendant's possession of weapons and his complicity in the beating of a witness constitute irrelevant and prejudicial evidence which portrayed Defendant as a violent and dangerous person resulting in reversible error?
>
> IV. Were the prosecutor's' closing and rebuttal arguments reversibly erroneous by appealing to the fears and prejudices of the jury, by expressing a personal opinion of guilt of he Defendant, and by denigrating the character of the Defendant?
>
> V. Does Defendant's sentence violate Michigan's constitutional prohibition against cruel or unusual punishment?

The Michigan Court of Appeals reversed Petitioner's conviction and sentence finding that the prosecutor engaged in misconduct. *People v. Bahoda,* 202 Mich. App. at 216-220.

The prosecutor filed an application for leave to appeal with the Michigan Supreme Court, which was granted. *People v. Bahoda,* 445 Mich. 881; 519 NW2d 887 (1994) (table). The Michigan Supreme Court then reversed the ruling of the Michigan Court of Appeals and reinstated Petitioner's conviction and sentence. *People v. Bahoda,* 448 Mich. 261; 531 NW2d 659 (1995).

On April 23, 1997, Petitioner filed a motion for relief from judgment with the trial court alleging ineffective assistance of counsel for: (1) "[f]ailing to object to leading questions by [the] prosecutor which permitted evidence of a conspiracy without legal foundation;" (2) "[f]ailing to object to hearsay testimony which permitted evidence of a conspiracy without legal foundation;" (3) "[f]ailing to request cognate lesser offense of 120 grams where evidence warranted same; (4) "[f]ailing to request severance where co-defendant's involvement in a drug conspiracy was prejudicial to Defendant Bahoda's right to a fair and impartial trial; and (5) "[f]ailing to move for verdict as against the great weight of the evidence." (Mot. for Rel. from Judg., 4/7/97, at 2).

On April 24, 1997, Petitioner filed a petition for writ of habeas corpus with this Court. *Bahoda v. Jones,,* No: 97-CV-40120 (E.D. Mich. Dec. 30, 1997). Petitioner's motion for relief from judgment was denied on June 19, 1997. Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals in order to challenge the trial court's June 19, 1997 order. Petitioner raised the following claim in his application:

> I. The trial court abused its discretion in denying Defendant's motion for relief from judgment and motion to a review grand jury petition and order on the basis of ineffective assistance of counsel.

The Michigan Court of Appeals denied relief "for failure to meet the burden of establishing

entitlement to relief under MCR 6.508(D)." *People v Bahoda,* No: 204571 (Mich. Ct. App. Dec. 17, 1997). This Court dismissed Petitioner's habeas petition without prejudice on December 30, 1997 on exhaustion grounds. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the following issue:

> I. The Defendant is entitled to a *Ginther* hearing to address the violation of his constitutional right to due process and effective assistance of counsel both at his trial and for his first appeal as of right as the Defendant has met the burden of entitlement to relief under MCR 6.508(D).

Petitioner's application for leave to appeal was denied. *People v. Bahoda,* 459 Mich. 884; 587 NW2d 498 (1998) (table).

Petitioner then filed a second motion for relief from judgment on September 3, 1999, raising the following claims:

> I. The prosecutor's suppression of evidence of impeachment regarding inducements to material witness, Wissam Abood, and the prosecution's failure to correct false testimony of that witness regarding such inducements deprived Defendant of his right to the full and effective confrontation of witnesses and of his due process right to a fair trial
>
> II. Defendant was deprived of his constitutional right to the effective assistance of trial and appellate counsel when trial counsel failed to request an instruction based upon the "multiple conspiracy doctrine" in a case where the prosecution charged a single conspiracy and where the evidence at trial showed the existence of at least two independent conspiracies; and where appellate counsel failed to raise this meritorious issue.
>
> III. Defendant is entitled to relief from judgment and to a new trial based upon newly discovered evidence of material prosecutorial and law enforcement inducements promised to witness Wissam Abood.
>
> IV. Individually and in concert, the constitutional errors at bar require that Mr. Bahoda's conviction be vacated and the charges dismissed.

The trial court entered an order denying Petitioner's motion for relief from judgment on March 5, 2003. (Pet. App. at 40-45).

Petitioner then filed an application for leave to appeal with the Michigan Court of Appeals arguing the following issues:

> I. Defendant's second motion for relief from judgment was based on a claim of new evidence which was not discovered before the first motion for relief from judgment.
>
> II. The trial court should not have applied the actual prejudice standard in resolving Defendant's motion.

Petitioner's application for leave to appeal was denied. *People v. Bahoda,* No: 247542, (Mich. Ct. App. April 25, 2003). On May 14, 2003, Petitioner filed a motion for re-sentencing. Petitioner also filed an application for leave to appeal with the Michigan Supreme Court regarding the April 25, 2003 order. Relief was denied. *People v. Bahoda,* 469 Mich. 945; 670 NW2d 671 (2003). On February 5, 2004, the trial court denied Petitioner's re-sentencing motion. (Pet. App. 49-52).

Petitioner sought leave to appeal the February 5, 2005 order with the Michigan Court of Appeals. Relief was denied. *People v. Bahoda,* 474 Mich. 898; 705 NW2d 115 (2005).

Petitioner now seeks to file a writ of habeas corpus asserting the following claims:

> I. Petitioner's due process right to a fair trial was violated through the prosecutor's inflammatory actions at trial
>
> II. Petitioner's Sixth Amendment right to assistance of counsel was violated when his attorney performed deficiently at trial and on direct appeal.
>
> III. Petitioner's right to a fair trial was denied when the state allowed an informant to testify that he was receiving nothing in exchange for his assistance.
>
> IV. The trial court violated the Eighth Amendment when it refused to re-sentence Petitioner under Michigan's amended drug laws.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions. Petitioner is entitled to the writ of habeas

corpus if he can show that the state court's adjudication of his claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different fro an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law objectively unreasonable." *Id.* at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.2d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

**III. DISCUSSION**

**A. Statute of Limitations**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a one-year statute of limitations shall apply to an application of writ of habeas corpus by a person in custody pursuant to

a judgment of a state court. 28 U.S.C. §2244(d)(1).[1] However, the AEDPA is not applicable in this case because Petitioner's date of conviction was on February 26, 1991, prior to the enactment of the AEDPA which was on April 24, 1996. Because enactment of the AEDPA could extinguish otherwise viable claims, the Sixth Circuit has held that there is a one-year grace period from the enactment of the AEDPA on April 24, 1996. *Austin v. Mitchell,* 200 F.3d 391, 393 (6th Cir. 1999). As a result, a petitioner whose conviction became final prior to the effective date of the AEDPA had until April 24, 1997 to file his petition. *Payton v. Brigano,* 256 F.3d 405, 407 (6th Cir. 2001); 28 U.S.C. §2244(d)(1)

**1. Timing of Petitioner's Filings**

In this case, Petitioner does not dispute the filing chronology relative to his pleadings, nor when trial and appellate orders were issued, which succinctly is as follows:

● February 26, 1991 - Petitioner was convicted.

●October 19, 1993 - Petitioner filed an appeal of right with the Michigan Court of Appeals and Petitioner's conviction and sentence were reversed. *People v. Bahoda,* 202 Mich. App. 214; 508 NW2d 170 (1993).

● March 22, 1995 - The state filed an application for leave to appeal with the Michigan Supreme Court which reversed the Michigan Court of Appeals' judgment and reinstated Petitioner's

[1]The statutory period of limitations begins to run from the latest of the following dates: "(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. §2244(d)(1).

conviction and sentence. *People v. Bahoda,* 448 Mich. 261; 531 NW2d 659 (1995).

● April 23, 1997 - Petitioner filed a motion for relief from judgment.

● April 24, 1997 - Petitioner filed a petition for writ of habeas corpus with this Court. *Bahoda v. Jones,* No: 97-40120 (E.D. Mich. Dec. 30, 1997)

●June 19, 1997 - The trial court denied Petitioner's motion for relief from judgment

● December 17, 1997 - Petitioner filed an application for leave to appeal the June 19, 1997 order which was denied. *People v. Bahoda,* No: 204571 (Mich. Ct. App. Dec. 17. 1997)

● December 30, 1997 - This Court dismissed Petitioner's petition for writ of habeas corpus on exhaustion grounds. *Bahoda v. Jones,* No: 97-40120 (E.D. Mich. Dec. 30, 1997)

● July 7, 1998 - This Court granted Respondent's motion for reconsideration where the Court modified its December 30, 1997 dismissal order by limiting the time frame in which Petitioner could return to the Court with a habeas filing if he so chose.

● October 26, 1998 - Petitioner filed an application for leave to appeal with the Michigan Supreme Court which was denied. *People v. Bahoda,* 459 Mich. 884; 587 NW2d 498 (1998).

● September 3, 1999 - Petitioner filed second motion for relief from judgment.

● March 5, 2003 - The trial court denied Petitioner's motion for relief from judgment.

● April 25, 2003 - Petitioner filed an application for leave to appeal with the Michigan Court of Appeals which was denied. *People v. Bahoda,* No: 247542 (Mich. Ct. App. April 25, 2003).

● February 4, 2005 - Petitioner filed an application for leave to appeal with the Michigan Supreme Court which was denied. *People v. Bahoda,* 474 Mich. 898; 705 NW2d 115 (2005).

● November 3, 2005 - Petitioner filed his petition for habeas relief through counsel.

**2. Analysis**

**a. Motion for Relief from Judgment & First Habeas Filing**

As previously stated, since Petitioner's date of conviction was on February 26, 1991, prior to the enactment of the AEDPA which was on April 24, 1996, Petitioner is granted a one-year grace period from its enactment in which to file a timely habeas petition. Therefore, in order for Petitioner to avoid having his habeas petition time-barred, it should have been filed by April 24, 1997.

On April 23, 1997, Petitioner filed his first motion for relief from judgment. A properly filed application for state post-conviction review or other state collateral review tolls the statute of limitations during the period the application is pending. 28 U.S.C. §2244(d)(2). An application is "properly filed when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett,* 531 U.S. 4, 8 (2000). Therefore, Petitioner successfully tolled the statute of limitations one day before its expiration. Petitioner also filed on April 24, 1997 a writ or habeas corpus with this Court.

Petitioner's case was being adjudicated in both state and federal venues until December 30, 1997 when this Court dismissed Petitioner's habeas petition without prejudice on exhaustion grounds. Even though Petitioner's case was dismissed, the respondent filed a motion for reconsideration challenging the following language in the Court's dismissal order:

> In the event that the state courts are unable to provide Petitioner with the relief he requests, Petitioner will be permitted, upon motion, to re-open the instant habeas proceedings to avoid any potential statute of limitations issue.

(Pet. Reply Br., Ex. B, Order, 7/7/98). The respondent was concerned that this language would relieve "the petitioner of the consequences of the statute of limitations and provide [ ] an unlimited time in which to re-file his application." *Id.*, quoting dkt.# 11 at 2. The Court

agreed and modified its order to read as follows:

> [P]etitioner does not have "an unlimited time" within which to attempt to reinstate his §2254 application in the event he is unsuccessful in securing relief through state court remedies. Rather, petitioner is still required to comply with the statute of limitations, ***but the limitations period will be tolled for the duration of the post-conviction relief process in state court.***

*Id.* (emphasis added). Prior to this Court's decision on respondent's motion for reconsideration with this Court, Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, appealing the denial of his motion for relief from judgment, which was denied on December 17, 1997. While the reconsideration motion was pending, Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied on October 26, 1998.

From October 26, 1998 until September 3, 1999, when Petitioner filed his second motion for relief from judgment with the trial court, and just under eleven months later, Petitioner took no action relative to the adjudication of this matter. The one-year limitations period had expired before Petitioner sought a second state post-conviction review. A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled. *See Hargrove v. Brigano,* 300 F.3d 717, 718 n.1 (6th Cir. 2002).

It is during the October 1998 to September 1999 time-frame that Respondent argues Petitioner's habeas petition became time- barred since Petitioner only had one day remaining on the statute in which to file a timely habeas petition. Additionally, after Petitioner's last application for leave to appeal was denied in the Michigan Supreme Court on February 5, 2005, Petitioner waited until November 3, 2005 (nine months) before he returned to this Court to file his habeas petition. Although Petitioner makes the statement that his claims are not time-barred, he fails to set forth any facts or legal authority to support his position. Instead, Petitioner merges the statute of limitations

claim into an equitable tolling argument. Therefore, before the Court addresses the issue of equitable tolling, the Court finds that Petitioner's habeas petition is time-barred.

**b. Equitable Tolling**

The habeas limitations provision is not a jurisdictional prerequisite to habeas relief, and is thus subject to equitable tolling. See *Dunlap v. United States,* 250 F.3d 1001, 1007 (6th Cir. 2001). Nevertheless, "equitable tolling [should] be applied sparingly [.]." *Id.* at 1008. In determining whether equitable tolling is appropriate, the Court must consider: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Id.* "The petitioner bears the burden of establishing that he is entitled to equitable tolling" *McClendon v. Sherman,* 329 F.3d 490, 494 (6th Cir. 2003).

The Court has reviewed Petitioner's equitable tolling argument and does not find it persuasive. First, it should be noted that Petitioner has been represented by counsel at every stage in this matter (i.e., state appellate court proceedings, 1997 habeas proceedings, and now these proceedings). Essentially, Petitioner cites the following reasons for the delay in filing a timely habeas petition: (1) counsel's lengthy preparation of habeas pleadings, (2) voluminous documents and pleadings to review in preparation for drafting a proper writ of habeas corpus, (3) complex record for counsel to review; (4) confusion about the orders; (5) Respondent would not suffer prejudice; and (6) it would have been impossible to timely file a habeas petition since there was only one day left on the statute of limitations following the dismissal of his first petition. (Pet. Reply Br. at 7-9) Reviewing the Petitioner's basis for the delay in filing a timely habeas petition and the

equitable tolling standard, it is clear that Petitioner has failed to substantiate an equitable tolling claim.

First, an attorney's preparation of pleadings is generally not a basis upon which to toll the statute of limitations. See *Allen v. Yukins,* 366 F.3d 396, 404 (6th Cir. 2004). Secondly, although, there only remained one day on the statute of limitations, there was nothing precluding Petitioner from filing multiple pleadings in the state and federal courts in order to preserve his rights under the habeas statutes. This was done before when Petitioner filed his first motion for relief from judgment and his first habeas petition. For these reasons, the Court does not find that equitable tolling doctrine will preclude Petitioner's habeas petition from being time-barred.

**c. Suppression of False Informant Testimony**

Petitioner argues that his conviction was secured by the prosecutor's knowing use of false testimony, where an informant, Wissam Abbod, testified that he had not entered into a cooperation agreement with the prosecution in exchange for leniency relative to his sentence. (See Pet. Appx. 59-60). However, in a December 2, 1999 affidavit, Mr. Abbod stated the following:

> 13. That when I testified against Saad Bahoda, I falsely stated that I had no deal.
>
> 14. That the Macomb County prosecutors and all individuals involved with prosecuting Saad Bahoda knew that I had a deal to testify.
>
> 15. That after Saad Bahoda and Raheed Akrawi's trials, the charges against me were reduced from delivery over 650 grams to delivery of less than 50 grams.
>
> 16. That I received life time probation and have not had to serve one day in jail as agreed.

(Pet. Appx. 74-75). This information was confirmed by Sheldon Halpern, counsel for Mr. Abbod. Mr. Halpern confirmed in a July 20, 1999 affidavit that he participated in negotiating a

deal with the Macomb prosecutors in this matter on behalf of his client. (Pet. Appx. 81-84). Petitioner argues that this claim should not be barred by the statute of limitations because these affidavits are newly discovered evidence; and under §2244(d)(1)(D), the statute begins to run "on the date on which the factual predicate of the claim . . . .could have been discovered through the exercise of due diligence." Since it is not clear from the record whether "due diligence" was exercised in this regard, the Court will review the merits of Petitioner's claim.

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (internal quotation omitted). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). A conviction obtained by the knowing use of perjured testimony must be set aside "if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . .'" *Giglio*, 405 U.S. at 154, *quoting Napue*, 360 U.S. at 271. *See also United States v. Agurs*, 427 U.S. 97, 103 (1976).

In order to prove this claim, a Petitioner must show that (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1999). Petitioner has the burden of proving a *Brady*[2] violation. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000) (citing *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972)).

In most cases involving a *Brady* violation, evidence is considered material only "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles*, 514 U.S. at 433-34, *quoting United States v.*

[2]*Brady v Maryland*, 373 US 83 (1963).

*Bagley*, 473 U.S. 667, 685 (1985).[3] In the case of the knowing presentation or use of false testimony however, a standard of materiality more favorable to the defendant applies. In such cases, false testimony is "material" if "'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Giglio*, 405 U.S. at 154, *quoting Napue*, 360 U.S. at 271. If the court finds the testimony material, it must determine whether the error was harmless.[4]

In this case the Court finds that although there is evidence offered by Petitioner to establish the existence of an undisclosed cooperation agreement and that a prosecution witness's trial testimony was perjured, "[r]ecanting affidavits . . . are viewed with extreme suspicion." *U.S. v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991). In this case, such suspicion is warranted. The affidavit(s) lack any explanation for Mr. Abbod's motivation for his initial testimony or the subsequent change in his testimony. Also, it is inconsistent with other, substantial evidence in the

---

[3]This materiality standard is commonly referred to as the "*Bagley* standard."

[4]A separate harmless-error analysis is not required when addressing a *Brady* claim that does not involve the knowing presentation or use of false testimony. "The reason is compelling: the *Bagley* materiality standard necessarily requires a court to find an impact on the jury verdict sufficiently substantial to satisfy the *Brecht* harmless error test. Thus, in the non-perjury setting, all that is required or appropriate is the one-step *Bagley* inquiry into reasonable probability." *Gilday v. Callahan*, 59 F.3d 257, 268 (1st Cir. 1995).

In contrast, because the materiality standard applicable to perjury-related claims is less demanding than the *Brecht* [*Brecht v. Abrahmson,* 507 Mich. 619 (1993)]. I can do the harmless-error analysis, where a court finds that the less demanding materiality standard has been satisfied, the court must still apply the *Brecht* harmless-error analysis. *See Carter v. Mitchell*, 443 F.3d 517, 537 (6th Cir.2006) (applying *Brecht* harmless-error analysis to claimed *Giglio* violation); *Gilday*, 59 F.3d at 268 ("Applying the [*Giglio* standard] in most cases involving perjury or its equivalent will likely result in a finding of constitutional error. Scaling that lower materiality hurdle, however, will still leave the petitioner facing the *Brecht* harmless error inquiry . . . ").

trial record:

> Wissam Abbod was by no means the sole provider of evidence connecting the defendant to the crimes charged. Rene Arias testified to meeting defendant, Ray (Kalasho) and "Atheer" at a mall to negotiate a 33 kilogram cocaine deal. Arias obtained the cocaine and a car with a false gas tank. He loaned the car to the defendant and Atheer. Eventually the defendant returned the car to him. He testified that he made other trips from Florida to Michigan to deliver cocaine to the defendant and Atheer. Ray was the boss and the defendant and Atheer were front men. His testimony showed that the defendant was fully involved as a conspirator and aider and abettor in the Kalasho family cocaine business. Arias admitted that he had a plea agreement involving cooperation with the government.
>
> Hassan Haider testified that he negotiated a one-kilogram cocaine deal with the defendant. The defendant obtained the cocaine but the deal fell through because Haider did not have sufficient cash in advance. Haider later was arrested for an unrelated cocaine delivery. He made a deal for his testimony.
>
> Salwan Asker was involved in the Kalasho family organization from the early days, having worked with the Kalahos in their grocery store. He identified the defendant as one of the people in the organization. He testified that the defendant had a secret compartment in the door of his car where the stereo speaker would go. It was used for hiding a gun or a small quantity of drugs. He and the defendant picked up cocaine and delivered money on numerous occasions. Asker decided to cooperate with law enforcement for protection and immunity.
>
> DEA Special Agent Hayes testified to a drug deal he negotiated with Ray Akrawi who was accompanied by the defendant. The deal did not go through because Akrawi and the defendant recognized Hayes' car as one that had been seized from a drug dealer.
>
> Lawrence Awdish testified to a cocaine deal he negotiated with the defendant, an eighth of a kilogram for $3,000. The defendant indicated that he usually did not deal in quantities that small but did agree to the deal. The defendant delivered the cocaine personally to close the deal. This transaction was witnessed by a DEA agent who also testified. Awdish received sentence consideration for his testimony.
>
> Several of these witnesses disclosed the deals they made with the prosecutor. The jury obviously was not inclined to disbelieve these witnesses merely because they were offered leniency for their cooperation It would seem reasonably clear to any juror that every one of these co-conspirators either had made a deal for their testimony or was hoping to receive leniency for their testimony.
>
> The evidence was overwhelming and convincing that the defendant was fully

> involved in the Kalasho organization. After considering the trial testimony as a whole, the Court finds that there was no reasonable likelihood that the disclosure of a deal made by Abbod for his testimony would result in an acquittal. Thus, regardless of whether Abbod actually received sentence consideration or a plea bargain, and regardless of whether he would have recanted his testimony, the defendant has not established actual prejudice under MCR 6.508(D)(3)(b)(i).

(See Petitioner's Appx. pp. 42-45 (Opinion and Order Denying Motion for Relief from Judgment, dated 3/5/03)). Therefore, the Court does not find the alleged newly discovered evidence material to the trial court proceedings in that it would not "in any reasonable likelihood have affected the judgment of the jury" and thus, does not undermine Petitioner's convictions. Habeas relief on this claim is denied.

**d. Default**

On March 23, 2009, Petitioner filed a motion for summary judgment as to his prosecutorial misconduct claim. He asserts that since the Respondent did not address the merits of the claim in its response that it has somehow defaulted on this issue and that Petitioner should be granted habeas relief relative to the prosecutorial misconduct issue. The Court disagrees.

The Court lacks authority to grant Petitioner a default judgment because such relief is unavailable in a 28 U.S.C. §2254 habeas proceeding based on the failure of state officials to address issues found in a habeas petition. *Flowers v. Trombley,* No. 05-CV-73539-DT, 2007 WL 1017595, at *1 (E.D. Mich. April 2, 2007) (unpublished) (citing *Allen v. Perini,* 424 F.2d 134, 138 (6th Cir.), *cert denied,* 400 U.S. 906 (1970); *Whitfield v. Martin,* 157 F.Supp.2d 758, 761 (E.D. Mich. 2001). The failure of a respondent to address a habeas issue does not relieve a habeas petitioner of his burden of proving that his custody is in violation of United States law. *Id.*

For the reasons stated, Petitioner's request for habeas relief is denied.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's "Motion for Summary Judgment as to Claim 1" [dkt. #38] is **DENIED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: April 13, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 13, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager